FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

2013 AUG 30 P 3: 38

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| GLOBAL TELECOM & TECHNOLOGY AMERICAS, INC. ) ) ) Plaintiff, ) ) v. ) ) CMC NETWORKS (pty) Ltd. ) ) Defendant. ) ) ) ) | Case No. 1:13-cv- 1092 TSE/TCB |

# COMPLAINT

The Plaintiff, Global Telecom & Technology Americas, Inc. ("GTT"), by counsel, states as follows for its Complaint against the Defendant CMC Networks (pty) Ltd. (" CMC"):

### Parties

1. This is an action for breach of contract and intentional interference with contract against the Defendant CMC.

2. The Plaintiff, GTT, is Virginia corporation having a principal office at 8484 Westpark Dr., Suite 720, McLean, VA 22102.

3. The Defendant CMC is a proprietary business with registered offices in Johannesburg, South Africa, which transacts business in the United States and in Fairfax County, Virginia.

### Jurisdiction and Venue

4. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

§1332 (A) because the parties are diverse and the amount in controversy exceeds $75,000.

5. Venue is appropriate in this court under 28 U.S.C. §1391 because a substantial portion of the events giving rise to the Plaintiff's claims alleged herein occurred in this district.

6. At all times relevant hereto, GTT was a provider of global telecommunications and data services to large enterprises, government and telecommunications carriers.

7. On or about March 15, 2007, GTT entered into a Master Services Agreement with Artel, Inc., a contractor for the United States Government, which established GTT as an exclusive subcontractor for Artel for the provisioning of telecommunications services.

8. In 2010, Artel was awarded a government contract to provide telecommunications services to the United States Department of State. The government contract was known as Work Order 61 ("WO 61"). WO 61 provided for installation and service of various telecommunications circuits ("Circuits") in the Middle East, Africa, and Asia.

9. On or about November 10, 2010, the Master Services Agreement, referenced in Paragraph 7, was supplemented by service level commitments entered into by GTT and Artel, contemplating services GTT was to perform as a sub-contractor to Artel for the WO 61 project. The Master Services Agreement as supplemented by the service level commitments is referred to herein as the "GTT-Artel MSA."

10. Artel subsequently ordered from GTT, pursuant to the GTT-Artel MSA, the Circuits to be installed pursuant to WO 61. A separate service order ("Service Order") was executed by Artel for each Circuit ordered pursuant to the GTT-Artel MSA.

11. Service Orders for at least 29 Circuits were executed pursuant to the GTT-Artel MSA from the period November, 2010 through June, 2012.

12. GTT, in turn, contracted with its vendor, Defendant CMC, for provisioning of the Circuits pursuant to an MSA and service level agreements entered into between GTT and CMC.

13. Artel was prohibited by the GTT-Artel MSA from working directly with GTT's vendors, including CMC.

14. In or about August, 2011, GTT and CMC sought to develop improvements to the inconsistent performance of certain of the Circuits. In order to facilitate this solution, GTT granted conditional permission to CMC to communicate directly with Artel. This permission was memorialized by an agreement entered into between CMC and GTT dated September 14, 2011 (the "CMC – Artel Permission Agreement").

15. The CMC – Artel Permission Agreement permitted CMC to communicate directly with Artel for the sole purpose of facilitating a solution to the inconsistent performance of certain of the Circuits. This agreement, however, expressly restricted CMC from selling services directly to Artel. The eight Circuits for which this conditional permission was granted were Circuits servicing Abu Dhabi, Amman, Cairo, Dhahran, Kuwait, Riyadh, Jerusalem, and Tel Aviv.

16. From the period beginning September, 2011, through the present, CMC solicited and sold, and, on information and belief, continues to solicit and sell, services directly to Artel in breach of the CMC – Artel Permission Agreement.

17. Specifically, beginning in September, 2011, CMC and Artel worked on the migration of various services from GTT to CMC so that Artel and CMC could cut-out GTT as the middleman between Artel and CMC.

18. The GTT-Artel MSA was terminated by Artel on August 27, 2012, and the WO

61 services previously provided by GTT to Artel were thereafter performed by CMC.

19. In or about September, 2011, CMC began to negotiate with Artel to service other contracts that, but for CMC's conduct, would have been available to GTT, including the Artel World Wide MPLS Network.

## COUNT I
### (Breach of Contract)

20. Plaintiff incorporates herein by reference its allegations set forth in Paragraphs 1 through 19 of this Complaint.

21. The CMC – Artel Permission Agreement restricted CMC from selling services directly to Artel from the period September 14, 2011, until September 14, 2013, or at least until the agreement between Artel and GTT remained operable.

22. CMC breached the contract by selling services directly to Artel thereby depriving GTT of revenue from the sale of those services.

23. As a result of CMC's breach of contract, Artel cancelled services prior to the expiration of the contracted for term and ceased payments to GTT and, on information and belief, obtained such services directly from CMC. Specifically, Artel failed to pay for and/or cancelled GTT services for the following Circuits and was damaged in at least the amount of $3,800,710.46.

## COUNT II
### (Intentional Interference with a Contract)

24. Plaintiff incorporates herein by reference its allegations set forth in Paragraphs 1 through 23 of this Complaint.

25. Pursuant to Section 3 of the GTT-Artel MSA, the term of the contract between GTT and Artel was to be from the period beginning March 15, 2007, through the date of

termination or expiration of all the Service Orders executed by Artel. GTT derived a continued economic benefit pursuant to this contractual relationship.

26. CMC knew of the contractual relationship between Artel and GTT and was aware of GTT's receipt of economic benefits thereunder.

27. CMC intentionally interfered with the contractual relationship between GTT and Artel by:

   a. Soliciting Artel to terminate the Artel-GTT relationship and contract directly with CMC;

   b. Setting up a shell company, Rauzan, Ltd., to act as an alter-ego of CMC in an attempt to hide CMC's attempts to interfere with the Artel-GTT relationship; and,

   c. Using confidential and proprietary information derived from its relationship with GTT to solicit a direct contractual relationship with Artel and to otherwise interfere with the Artel-GTT relationship.

28. CMC's communications with Artel reflect CMC's knowledge that its actions were improper and violative of the CMC – Artel Permission Agreement and would likely result in damage to GTT.

29. CMC's actions have resulted in the termination of the relationship between Artel and GTT, the GTT-Artel MSA, and the Service Orders.

30. As a result of CMC's interference, GTT has suffered damages in the amount of at least $3,800,710.46.

31. CMC's intentional interference with the GTT-Artel MSA, the relationship between Artel and GTT, and the Service Orders referenced herein, was committed maliciously, willfully and in reckless disregard for GTT's rights.

## COUNT III
(Intentional Interference with a Business Expectancy)

32. Plaintiff incorporates herein by reference its allegations set forth in Paragraphs 1 through 31 of this Complaint.

33. The GTT-Artel MSA memorialized a valid contractual relationship between GTT and Artel from the period March 15, 2007, through August 27, 2012. Pursuant to this contractual relationship, GTT anticipated a continued economic benefit as a result of its performance of services in the form of Service Orders pursuant to WO 61. GTT expected additional Service Orders and Work Orders pursuant to the MSA in which it was expected to receive substantial economic benefit.

34. CMC knew of Artel and GTT's contractual relationship and was aware of GTT's receipt of economic benefits thereunder. CMC was similarly aware of GTT's business expectancy and the economic benefits GTT expected to reap from the GTT – Artel relationship.

35. CMC intentionally interfered with the GTT's business expectancy by:

    a. Soliciting Artel to terminate the Artel-GTT relationship and contract directly with CMC;

    b. Setting up a shell company, Rauzan, Ltd., to act as an alter-ego of CMC in an attempt to hide CMC's attempts to interfere with the Artel-GTT relationship; and,

    c. Using confidential and proprietary information derived from its relationship with GTT to solicit a direct contractual relationship with Artel and to otherwise interfere with the Artel-GTT relationship.

36. CMC's actions have resulted in the termination of the relationship between Artel and GTT and the GTT-Artel MSA thereby depriving GTT of the economic expectancy it

would likely have derived from the relationship but for CMC's misconduct.

37. CMC's intentional interference with GTT's economic business expectancy was committed maliciously, willfully and in reckless disregard for GTT's rights.

38. As a result of CMC's interference, GTT has suffered damages in an amount to be proved at trial not less than $4,997,160.00.

WHEREFORE, the Plaintiff prays for:

A. Entry of a judgment against CMC Networks in the amount of $4,997,160.00 in compensatory damages or such other amount as may be proven at trial;

B. Entry of a judgment against CMC Networks in the amount of $350,000.00 in punitive damages; and,

C. Its cost and such other and further relief that is fair, just and equitable under the circumstances

GLOBAL TELECOM & TECHNOLOGY
AMERICAS, INC.
By Counsel

John E. Coffey (VSB # 19086)
jcoffey@rpb-law.com
Nicholas J. Gehrig (VSB# 74910)
ngehrig@rpb-law.com
**Redmon, Peyton & Braswell, LLP**
510 King Street, Suite 301
Alexandria, VA 22314
703-684-2000
703-684-5109 (fax)
*Counsel for Plaintiff*